### A RULE WHICH SOMETIMES PREVENTS SIMPLE AND DIRECT PROCEDURE.

Superior Court of Cincinnati.

## OLIVE A. McLAUGHLIN v. THE P., C., C. & ST. L. RAILWAY CO.

Decided, November, 1916.

*Res Ipsa Loquitur—Not Applicable Where the Injury Complained of Was Not the Probable Consequence Nor One Reasonably to be Anticipated from the Cause Assigned—Mistaken Refusal by Trial Judge to Grant Motion to Direct Verdict for the Defendant—Can Not be Cured by Subsequently Granting a Motion for Judgment Non Obstante Veredicto—Justice Delayed Under the Ohio Rule.*

The Ohio rule which denies to a trial judge authority to grant a motion for judgment *non obstante veredicto* unless based on the pleadings, where he has become satisfied that error was committed in overruling the motion for a directed verdict for the defendant, works hardship and necessitates useless labor and expense, where a case is found to be without merit and should be immediately terminated.

*Maxwell & Ramsey* and *Robert A. Taft,* for the motions.

*Thomas L. Michie* and *Fulford, Shook, Wilby & Fricke,* contra.

MERRELL, J.

Ruling on motion for new trial and for judgment *non obstante.*

The plaintiff was a passenger on defendant's train from Cincinnati to London, Ohio. She sat by an open window on the left-hand side of the car, which was north bound, and therefore next to the south bound track of defendant's road. She claims that at a certain point in the journey an engine on the south bound track exploded a torpedo immediately opposite the window by which she was seated, and that she was struck upon the arm in two places near the elbow by particles from the exploded torpedo and was deafened by the explosion. To indicate that the torpedo was exploded at this point, there is the plaintiff's own testimony and that of a woman passenger sitting behind her, who heard particles rattling against the car window, and the testimony also of the train conductor, who was not in the plaintiff's car at the time, but from the next car heard a sound which may have been that of a torpedo. The plaintiff made an outcry and another passenger in her car bound up a red spot which he saw upon her arm. A physician acting for the railroad company examined the plaintiff's arm at the next station, and a day or two after plaintiff arrived at her destination she called upon a physician in private practice who suggested that the arm be bound up. Neither of these physicians was called at the trial by the plaintiff, and the only physician who testified in her behalf was one who first examined her in 1915, three years after the accident, which occurred in 1912. This physician testified that he found trouble with the funny bone which might have resulted from a bruise, and was probably due to a pressure on the nerve. The plaintiff, called upon to describe her position, said that she sat in the middle of the car seat, reading, with her elbow in a position that must have been below the level of the window sill. She wore a thin waist which she does not recall as having

been cut or burnt. The waist itself was not preserved for examination at the trial.

As part of the plaintiff's case, there was testimony by a person who had an opportunity to make repeated observations of the explosion of railroad torpedoes, and of the distance and course of flight of particles after explosion. This testimony hardly suffices to show the possibility of a particle from a torpedo travelling the distance and course supposed to have been taken in the present instance. Under the circumstances of this case, a torpedo exploded on the rail nearest to the plaintiff would have had to travel approximately twenty feet, to have reached a height of something over six feet, to pass over the window sill of plaintiff's car, and then descend somewhat in order to strike against plaintiff's elbow in the position she occupied.

Notwithstanding this aspect of the plaintiff's case the motion to direct a verdict was overruled, the court being somewhat influenced by the idea that in the relation of carrier and passenger the doctrine of *res ipsa loquitur* might apply.

From the defendant's case, it would appear that immediately after the plaintiff's outcry careful search was made of that portion of the car in which the plaintiff sat, without finding a particle from the torpedo or anything that would tend to explain her hurt. The railroad physician who made a cursory examination of the plaintiff' perhaps an hour after the injury, testified that he could not observe any bruise or swelling upon the arm and found no difference between the plaintiff's injured and uninjured arm, even upon comparison with a steel tape measure. The physician unconnected with the defendant company upon whom the plaintiff called a day or two after the accident, testified that he saw no evidence of external injury to the arm, no red mark, and no swelling. He examined the arm for tenderness, and found the entire arm tender, especially sensitive about the shoulder.

The defendant company, claiming that there was no torpedo explosion at the point in question, called the telegraph operator

stationed at the place, and the section foreman who was at work nearby and within sight and hearing, neither of whom knew of any torpedo or heard any explosion; presented also testimony indicating that the train which passed the car in which plaintiff was riding reached its next stop within a time which it could not have accomplished if it had been flagged by a torpedo explosion. The defendant also presented the testimony of witnesses having a wide observation of the action of railroad torpedoes, to the effect that a particle of an exploded torpedo had never been known to carry the course and distance necessary to accomplish plaintiff's injury, and to explain the actual effect of a torpedo explosion and the known possibilities of particles flying. By other evidence the defendant established the fact that for a period dating back several years before plaintiff's injury, it had abandoned the use of tin torpedoes, with the effect and operation of which alone the evidence in the plaintiff's case had concerned itself, and had adopted the use of paper torpedoes.

The construction of paper torpedoes and the possible effects of their explosion were fully detailed by one expert in their manufacture, having a wide experience as to their consequences through repeated tests. The testimony of this witness was to the effect that the paper covering of such torpedoes is turned by their explosion into what he called "feathers," which carried one or two feet away from the point of explosion, and that the torpedoes are absolutely non-flying. The same witness testified that particles of tin torpedoes do not rise more than two or three feet, and that in case of both varieties the explosion was downward, and necessarily so because the torpedo is crushed under the engine wheel, which extends or overhangs beyond the top surface of the rail. On the foregoing testimony the jury returned a verdict in a substantial sum for the plaintiff.

The defendant now moves for a new trial and also for a judgment in its favor notwithstanding the verdict. Upon the evidence thus outlined, I am entirely clear that the verdict was against the manifest weight of the evidence. I am further convinced that the error in the result thus far reached is much more fundamental.

The case was given to the jury on what I now feel to be a misconception of the scope of the doctrine of *res ipsa loquitur*. This doctrine, which has its commonest application in cases arising between passenger and carrier, is not a rigid formula. A passenger receiving an injury from a cause apparently within the control of the carrier, may frequently invoke the doctrine as a substitute for specific proof of acts or omissions constituting negligence. In order, however, for the doctrine to have any application, the injury must be one caused by an instrumentality in the control of the carrier, in such wise that the ordinary mind will naturally and reasonably infer negligence on the part of the carrier, and infer also the causation of the injury by reason of such negligence. The doctrine is one which substitutes a natural inference for legal proof.

Under the supposed facts of the present case, it may be doubted whether the injury claimed under the circumstances of its occurrence naturally suggests the inference of negligence on the part of the railroad in the use of signal torpedoes. Even if such inference does arise, its force is totally lost when, upon the evidence, it appears that the injury claimed was not the probable consequence, nor one reasonably to be anticipated from the explosion of a signal torpedo at such a distance.

Moreover, presumption or no presumption, the burden of proof rested upon the plaintiff in this case to establish negligence on the part of the defendant, and to establish further that such negligence was the proximate cause of the injury claimed. It is in the latter essential proof that the present plaintiff has totally failed. This failure was fatal to her case, even if it had been established beyond peradventure of a doubt that she was actually struck by a flying particle of a torpedo and permanently injured. This was the ruling of the court of appeals of this district in *Dunham* v. *B. & O. S. W. R. R. Co.*, 2 Ohio App., 326; 18 C.C.(N.S.), 204, and *C., H. & D. R. R.* v. *Hahn*, 4 Ohio App., 327; 22 C.C.(N.S.), 94. In those cases the plaintiffs injured by particles of exploded signal torpedoes were not passengers of the defendant railroads and were therefore en-

titled only to the exercise of ordinary care.  In the present case the plaintiff as a passenger was entitled to a very high degree of care.  The distinction is of no consequence for the present purpose, for the plaintiffs in the cases referred to failed, as the plaintiff in the case at bar must fail, for the reason that the injury sustained was, putting it at the highest, an extraordinary or phenomenal consequence, and not one within the range of consequences reasonably to have been anticipated.

For the reasons that I have thus stated, the verdict in the present case is without evidence to sustain it, and is contrary to law.

If the point of view thus far expressed be correct, it follows that the motion made at the conclusion of the evidence to direct a verdict for the defendant should have been granted.  That same motion has been in effect renewed by the pending motion for judgment *non obstante veredicto*.  For reasons I have attempted to state, a verdict for the defendant should have been directed at the conclusion of all the evidence, and the same reasoning requires that a judgment *non obstante* be now rendered. The only question remaining concerns the power of this court to grant such a motion at this stage of the proceedings.  (There is here no foundation for a judgment on the pleadings, and none is claimed.)

I am forced to the conclusion that the desired power does not exist.  The absence of such power does not arise from the prohibition of any statute, nor does it result from any wholesome limitation upon the powers of a trial judge.  The limitation is found in judge-made law that has been grafted upon our practice and so recently re-stated by the Supreme Court that there seems no possibility of avoidance except by the enactment of legislation.

In the case of *Baltimore & Ohio Railroad Co.* v. *Nobil*, 85 O. S., 175, decided December, 1911, it is laid down in the syllabus as follows:

"In disposing of a motion for judgment nowithstanding the verdict of the jury, the trial court is confined to the considera-

tion of the statements in the pleadings and the record outside of the statements in the pleadings should not be considered in deciding such motion. *McCoy et al v. Jones et al,* 61 O. S., 119, approved and followed.''

In the Nobil case, moreover, the court expressly approves its former holding in *Challen* v. *Cincinnati,* 40 O. S., 113. In the latter, the plaintiffs during the course of the trial, in open court, had made an admission which destroyed their case and that, too, as a matter of law. After verdict for the plaintiffs, the court, acting upon this admission, rendered judgment for the defendant, incorporating in the judgment entry a statement of the admission. By a *per curiam* opinion the court

''*Held*: Admission made during the jury trial not incorporated into a pleading was only a part of the evidence and has no place in the record except in the bill of exceptions. Hence, the statement on the journal must be disregarded. On such a motion the court could only look at the pleadings.''

The results in the three cases referred to were unnecessary. In each instance the conclusion was predicated upon a statute now known as General Code, Section 11601:

''When upon the statements in the pleadings one party is entitled by law to judgment in his favor, judgment shall be so rendered by the court, although a verdict has been found against such party.''

The court treated this statutory provision as exclusive although the statute does not profess to have this scope. It does not follow that the power of a trial court to render judgment upon the pleadings in favor of one party notwithstanding a verdict of the jury in favor of the other, is exclusive of the further power to render a judgment notwithstanding the verdict, where the party who has prevailed before the jury has failed to make a case sufficient in law. However, the state of our practice, as determined in *R. R. Co.* v. *Nobil, supra,* is no longer open to dis-

tinction or evasion. It follows that in the case at bar the motion for judgment *non obstante veredicto* must be overruled.

This result is unfortunate for the parties and reflects distinct discredit upon our methods of legal administration. A brief consideration of the future possibilities of the case at bar will make this clear.

As the record stands, the case has been fully, and it is believed, fairly tried. It is not suggested on either side that there has been substantial error in the receiving or rejection of evidence. The charge of the court to the jury is not criticised. Both parties have had the fullest opportunity to develop their respective cases, and every function of a trial before a proper tribunal has been fulfilled. The jury has returned a substantial verdict for the plaintiff which she should be allowed to enforce if the verdict is founded in law. On the other hand, the defendant has now obtained a deliberate judgment that it is under no legal responsibility to the plaintiff upon the facts of her case. If a judgment for the defendant were now entered, the parties might decide to abide by that conclusion, or the plaintiff would have the opportunity, by proceeding in error, to take the opinion of the reviewing court. Should the latter course be followed the reviewing court might approve the decision of the trial judge and thus end the litigation, or it might take the contrary view that the verdict actually rendered was justified in law, uphold the proceeding in error and enter final judgment upon the verdict.

As our practice now is, by virtue of the conclusive determinations of the Supreme Court, it is not open to the trial judge to permit or at least to enforce this sane and simple procedure. On the contrary, the verdict must be set aside, the parties put to a new trial, with a duplication of expense in the preparation of the case, in securing the attendance of witnesses from a distance, the public business delayed by a rehearing of the same witnesses at a scandalous waste of public funds for the payment of court officials and jury fees. As a result of such second trial, the then trial judge may find himself in the precise dilemma now confronting the court. Or a verdict may be directed for the

defendant, or a verdict obtained for the plaintiff, or it may happen that error will occur in the admission or rejection of evidence or in the charge of the court to the jury, requiring a third trial at the order either of the trial court or the appellate court. If at such second trial a verdict be directed for the defendant, the reviewing court may take a different view of the law and send the case back for a new trial. If a jury verdict for either party be had and judgment be entered thereon, the reviewing court may find it necessary to reverse and remand. In short, whatever be the outcome of such second trial, the case will not have been advanced one particle beyond the point now reached.

It would seem that a practice which invites such uncertainty and gross delay and unnecessary public and private expense would long ago have been discredited as archaic and absurd. On the contrary, it has been insisted upon, and from time to time reinforced.

Quite recently the Constitution of the state was amended by a process involving great expense and much disinterested effort to carry out the slogan of "one trial, one appeal." Yet for no conceivable reason we cherish an archaic practice which courts, and in fact requires repeated trials and also repeated reviews of one and the same case.

Of course, this unfortunate necessity arises from an error on the part of the trial judge. The error, however, is not ordinarily discreditable, but rather the reverse. The trial judge, called upon to examine the plaintiff's case before submitting it to a jury, should properly indulge every consideration in favor of such submission. If in the press of trial the judge indulge too large a liberality to plaintiff, seeking to support a doubtful case, upon some theory which his maturer judgment can not approve, the effort is at least commendable and should be encouraged. Where such doubt arises, as it constantly arises, in litigated cases, the trial judge should be permitted to take the opinion of the jury upon that theory of the case most favorable to the plaintiff, and thereafter if such theory seem to him totally unsupportable, to enter judgment for the other party

notwithstanding the verdict.  If this practice result in fewer instructed verdicts on the part of our trial judges no one can be heard to complain.  Certainly not the side of the plaintiff, which will not have to fight so hard to secure the opinion of a jury, nor yet the side of the defendant, whose every right and every possibility of success will be preserved in the power of the court to render judgment notwithstanding the verdict and directly contrary to the verdict.  Moreover, the practice advocated will not infringe upon the so-called scintilla rule, for its adoption will permit the trial judge to do after verdict only that which, if fully advised, he would have done before verdict, to-wit, direct a verdict for the defendant (usually), on the ground that the plaintiff's evidence was insufficient in law to warrant a recovery, or, in other words, that there was no evidence tending to support an essential element of the plaintiff's claim.  Manifestly, where there is conflict of evidence upon essentials there can be no directed verdict and no judgment notwithstanding the verdict.

The practice on the part of trial judges of taking a verdict from the jury with leave to enter contrary judgment after verdict has long obtained in the English courts.  In many of our state jurisdictions the present Ohio practice still obtains, and in others it has been suffered until changed by statute.  Among the jurisdictions last referred to are Pennsylvania (act of April 22, 1905, 6 Purdon's Digest, Supp. 7139), and Massachusetts (act of April 19, 1915, Gen. Acts 1915, Chap. 185, p. 166).*

*GENERAL ACTS OF MASSACHUSETTS, 1915.

Chap. 185.  An Act to Amend Judicial Procedure in Respect to Practice at Trials.

"SECTION I.  Chapter one hundred and seventy-three of the Revised Laws is hereby amended by striking out section one hundred and twenty and inserting in place thereof the following:  Section 120. When exceptions to any ruling or direction of a judge shall be alleged, or any question of law shall be reserved, in the course of a trial by jury, and the circumstances shall be such that, if the ruling or direction at the trial was wrong, the verdict or finding ought to have been entered for a different party or for larger or smaller damages

If the case at bar were an isolated or peculiar instance, the foregoing discussion would be futile. It happens, however, that it is merely an instance of what daily occurs in greater or less degree in every trial court. I may say that I was at first of the impression that the remedy for this absurd practice lay in the hands of individual judges by simply doing what common sense

---

or otherwise than as was done at the trial, the judge may reserve leave, with the assent of the jury, so to enter the verdict or finding, if upon the question or questions of law so raised the court shall decide that it ought to have been so entered. The leave reserved, as well as the findings of the jury upon any particular questions of fact that may have been submitted to them, shall be entered on the record of the proceedings, and if upon the question or questions of law it shall be decided, either by the same court or by the appellate court, that the verdict or finding ought to have been entered in accordance with the leave reserved, it shall be entered accordingly and, when so entered, it shall have the same effect as if it had been entered at the trial.

"SECTION II. Nothing herein contained shall be so construed as to limit the powers of the court conferred by chapter two hundred and thirty-six of the acts of the year nineteen hundred and nine or by chapter seven hundred and sixteen of the acts of the year nineteen hundred and thirteen.

"Approved, April 19, 1915."

ACT OF APRIL 22, 1905—Pennsylvania (6 Purdon's Digest, Supp. 7139.)

"35. Whenever, upon the trial of any issue, a point requesting binding instructions has been reserved or declined, the party presenting the point may, within the time prescribed for moving for a new trial, or within such other or further time as the court shall allow, move the court to have all the evidence taken upon the trial duly certified and filed so as to become part of the record, and for judgment *non obstante veredicto* upon the whole record; *whereupon* it shall be the duty of the court, if it does not grant a new trial, to so certify the evidence, and to enter such judgment as should have been entered upon that evidence, at the same time granting to the party against whom the decision is rendered an exception to the action of the court in that regard. From the judgment thus entered either party may appeal to the supreme or superior court, as in other cases, which shall review the action of the court below, and enter such judgment as shall be warranted by the evidence taken in that court."

and justice require, and what no statute forbids. In fact, this summary action has occasionally been resorted to and the result apparently approved by the reviewing courts. It will be found, however, that these instances may be plausibly justified as judgments rendered *on the pleadings,* or else have escaped challenge under the beneficent mantle of affirmance without report. In truth, however, the present Ohio practice is definitely and unmistakably laid down by recent decisions of our highest court and may not be departed from without the sanction of legislative enactment.

In the case at bar the motion for judgment *non obstante veredicto* is overruled and the motion for a new trial granted.